Deborah ANDERSON, et al., Plaintiffs,

v.

ROCHESTER–GENESEE REGIONAL TRANSPORTATION AUTHORITY, et al., Defendants.

No. 00–CV–6275L.

United States District Court,
W.D. New York.

April 26, 2002.

David L. Cook, Nixon, Peabody LLP, Rochester, NY, Bryan D. Hetherington, Sarah J. Gilmour, Public Interest Law School of Rochester, Peter O' Brian Dellinger, Rochester, NY, for Plaintiffs.

Paul J. Yesawich, III, Scott D. Piper, Harris Beach LLP, Pittsford, NY, for Defendants.

*DECISION AND ORDER*

LARIMER, Chief Judge.

This action was commenced by twelve individual plaintiffs and the Center for Disability Rights, alleging claims under the Americans with Disablties Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1983, against the Rochester–Genesee Regional Transportation Authority ("RGRTA"), Lift–Line, Inc. (a corporate subsidiary of RGRTA) ("Lift–Line"), sometimes collectively referred to herein as "the company," and two individual officers of those entities. Plaintiffs allege that de-

fendants have systematically violated the ADA by failing to provide paratransit services to the disabled that are comparable to the transportation services provided to the greater public in the Rochester, New York area serviced by defendants. In particular, plaintiffs allege that defendants have not adequately provided "next-day" service, i.e., rides provided the day after a ride request is made, as required by 49 C.F.R. § 37.131(b).

After both sides moved for summary judgment, the Court heard oral argument on their motions, and reviewed documentary and other evidence concerning defendants' provision of paratransit services. On August 14, 2001, the Court issued a Decision and Order ("August Decision") (familiarity with which is assumed) denying defendants' motion for summary judgment, and granting plaintiff's cross-motion for partial summary judgment on three of plaintiffs' four claims for relief. The Court declared that defendants had violated plaintiffs' rights under the ADA by: failing to provide next-day service to all ADA paratransit-eligible persons as required by 49 C.F.R. § 37.131(b); engaging in an operational pattern or practice that significantly limits the availability of paratransit services to plaintiffs, in violation of 49 C.F.R. § 37.131(f)(3); and failing to provide paratransit or other special transportation services in accordance with the plan that defendants submitted to the Secretary of Transportation under 42 U.S.C. § 12143(c)(7), in violation of 42 U.S.C. § 12143(e)(4).

The Court also directed defendants to take immediate steps to comply with their obligations under the ADA and federal regulations implementing it specifically with regard to the provision of next-day paratransit service. In addition, the Court directed the parties to attempt to work together to formulate a comprehensive plan to implement the Court's August Decision.

In response to the Court's directives, defendants have undertaken various steps to improve their paratransit services, and it appears from their most recent submissions that those steps have met with some measure of success. Defendants have, for instance, increased the number of buses during peak ridership times, increased the number of schedulers on staff, and hired additional bus drivers. As a result of these and other measures, defendants report that they have been able to schedule 99.86% of all rides requested from November 5, 2001 through January 31, 2002, and 98.8% of all next-day ride requests during that same period. Those figures represent a substantial improvement over defendants' previous performance which fell far below what the law requires. As I referenced in my August Decision, the evidence showed that during a representative period in 2000, defendants had granted about 95% of all ride requests, but only 43% of requests for next-day service.

Also in accordance the Court's directives, the parties have met with each other, as well as with the Court, on a number of occasions in an attempt to work out a mutually satisfactory plan which would not only resolve this litigation but would also establish a mechanism for dealing with future issues concerning the company and its services to the disabled. I believe that the parties worked diligently and in good faith to resolve the litigation, but their efforts proved unavailing. Although the parties had made significant progress and appeared to have reached agreement on many issues, they could not agree on several key issues and, therefore, the parties were unwilling to adopt any agreement at all, even concerning matters about which they appeared to have reached accord. This is regrettable.

It is therefore up to the Court to resolve these remaining disputes, in order to fully effectuate my August Decision. Both sides have submitted their proposals which they believe properly implement the Court's August Decision. The following Decision and Order, then, sets forth my findings and rulings on those disputes.

The principal holding in the Court's August Decision was that RGRTA and Lift–Line had failed to provide next-day service to all paratransit eligible persons as required by regulations implementing the ADA. The Court's August Decision determined that the company had failed to comply with the law and that it must take immediate steps to rectify its noncompliance.

I believe that it is appropriate for the Court to monitor, at least to some extent, Lift–Line's operation to ensure that the company adopts appropriate practices and procedures to better fulfil its obligations in the future to the disabled.

Although the parties have discussed a wide range of issues relating to paratransit services for the disabled, the parties, and especially plaintiffs, need to understand that the Court's role is limited—at least at this stage—to directing that appropriate procedures be adopted to ensure that its August Decision is fully implemented.

In order to implement the Court's August Decision, therefore, I direct and order the following:

1. The company must provide next-day ride service to all ADA paratransit eligible individuals who require such service, consistent with the terms of this Court's August Decision and consistent with the requirements of 49 C.F.R. (Subpart F), § 37.121, *et. seq.* "Next-day ride service" shall mean paratransit service requested by an ADA paratransit eligible individual (as defined by 49 C.F.R. [Subpart F], § 37.123 of the Regulations), up to the closing time of the reservation office the day before the day on which the ride is requested. Service provided shall be within one hour before or after the time for which the ride is requested, as required by 49 C.F.R. § 37.131(b)(2).

2. To implement the next-day ride service, the company shall take whatever steps are necessary to obtain more buses, drivers and schedulers to comply with all of the requirements concerning provision of paratransit service.

3. Within ten days of the date of entry of this decision, the company will phase in modifications to its reservation system to permit advance reservations to be made not more than three days prior to the desired trip.

Although plaintiffs have requested an exception from the three-day requirement for "good cause," I believe that such an exception is far too elastic under the present circumstances. One would think that a provider of such services would make reasonable accommodations in the spirit of assisting the disabled. At this time though, there is a high level of distrust, and animus between the parties which make such accommodations unlikely. The Court, however, will re-evaluate the situation after six months to determine if further modification is warranted.[1]

---

1. By letter dated March 28, 2002, plaintiffs belatedly suggest that this Court should decline to adopt any plan relating to the advance reservation period and related items, because the company allegedly failed to comply with regulations requiring public participation. The regulation concerning a change in the advance reservation formula is discussed at 49 C.F.R. § 37.131(b)(4). Plaintiffs claim that there is a typographical error in the regulation where it references the public participation requirements. The reference is to § 37.131(b) and (c) when it should properly reference § 37.137.

4. The Court endorses the company's goal of making its entire fixed-route fleet of buses wheelchair accessible. The company has set October 31, 2002, as its goal and the Court encourages the company to proceed with dispatch in that regard.

The Court encourages the company to make available, as soon as reasonably possible, information and voluntary training for Lift–Line riders who might be capable of riding the company's buses that are wheelchair accessible.

5. The company has started the process of recertifying eligible customers for paratransit services. Such a recertification process is provided for in the regulations (49 C.F.R. § 37.125(f)). Apparently the company has elected to contract this recertification process to a third party. Such a recertification program is permissible, and not unwise, as long as the process conforms to all applicable regulations and is not used as a vehicle for retaliation.

6. The company has indicated its intent to establish an administrative process to suspend paratransit services to individuals who persistently miss scheduled trips or cancel them in an untimely manner. Such a provision must be in full compliance with the regulations (49 C.F.R. § 37.125(h)).

7. In order to insure that the company fully complies with this Court's order and the applicable regulations, it is important that the company provide the Court with periodic reports. The following information shall be provided to the Court, and to one of plaintiffs' counsel, monthly, no later than the tenth day of each month:

(a) Demand Ride Information—This information will include:

(i) The number of rides requested and the number of rides scheduled by individuals who call Lift–Line to schedule non-subscription rides (Demand Rides). This information will be presented to the Court in a manner that shows the number of rides requested, and the number

First of all, this suggestion is untimely. The regulation has always required public participation. This Court's decision was entered in August 2001, and the Court and the parties have engaged in months of discussion and negotiation since then concerning the numerous issues relating to paratransit services. Plaintiffs have never previously suggested that the Court should not implement a plan which involves a change in the current advance reservation procedure. Plaintiffs never suggested that the company could make no change. They simply objected to moving the advance reservation period from fourteen to three days. The plaintiffs instead opted for a seven-day advance reservation plan.

Plaintiffs' March 28, 2002, letter is the first suggestion that the procedure utilized by the company concerning modification of the reservation system was defective, regardless of whether the change was for a three-day or seven-day reservation period. Even if I should interpret the regulations as plaintiffs now suggest is appropriate, it is clear that public participation has always been required. Based on the recitation in plaintiffs'

March 28 letter, I am not convinced that there has not been sufficient public input on the matters in issue. By plaintiffs' own admissions, there was a lengthy public hearing on the proposed advance reservation system, and other matters, at which numerous people attended and spoke. Public participation, however, is not tantamount to public veto power. Simply because the company adopted a position contrary to some who spoke at the public forum does not, by itself, demonstrate a lack of public participation.

The company has consistently advanced a sound basis for reducing the reservation period from fourteen days to some shorter time. The company expects that reservations made fourteen days in advance are much more likely to be cancelled than are those reservations made much closer to the travel date. The company expects that reducing the advanced reservation period will greatly reduce the number of cancellations which, in turn, should help make the system more efficient, and, therefore, better able to provide next day service.

of rides scheduled, by the number of days in advance of the date that the ride was requested.

(ii) For those demand rides for which reservations cannot be made, information showing (a) the date of the ride request, (b) the date and time for which the ride was requested and (c) the reason that the ride could not be scheduled.

(iii) The number of demand rides for which the rider failed to appear without canceling the ride (a "no-show"). Again, this information will show the number of days in advance of the date that the reservation was made and the date of the cancellation, or cancellations.

(iv) The number of demand rides that were canceled by the customer in advance of the ride. This information will be presented in such a manner that the Court can determine the number of days before the date on which the reservation was made, and the number of days before the date that the ride was canceled.

(b) Subscription Ride Information— This information will include:

(i) The number of subscription rides requested and the number of subscription rides scheduled (subscription rides). This information will be presented to the Court in a manner that shows the number of rides requested, and the number of rides scheduled.

(ii) For those subscription rides for which reservations cannot be made, information showing the reason that the ride could not be scheduled.

(iii) The number of subscription rides for which the rider failed to appear without canceling the ride (a "no-show").

(iv) The number of subscription rides that were canceled by the customer in advance of the ride.

(c) Certification/Recertification Report—This report shall include:

(i) For the recertification notifications mailed each month:

● The number of notification letters mailed during the prior month.

● The number of individuals who did not return the recertification form.

● The number of individuals who, by return of the recertification form or otherwise, notified the contractor that they no longer needed or desired paratransit services.

● The number of individuals who returned the recertification form requesting continued certification.

(ii) For recertification decisions issued that month:

● The number of decisions issued.

● The number of individuals denied certification.

● The number of individuals issued full certification.

● The number of individuals issued certification with restrictions or conditions.

(iii) For initial certification decisions the report shall include the same date as reported for recertification decisions.

8. This Court shall retain jurisdiction of this action following entry of this decision. The company's reporting obligation to the Court will commence on the date of the entry of this decision and extend for one year, unless for cause shown, on application, the Court deems it appropriate to extend the reporting period.

9. The Court declines at this time to impose a schedule of stipulated penalties for noncompliance by the company, but the Court will evaluate the situation after six months. It is expected that if there appear to be problems suggesting substantial noncompliance with this order or the Court's August Decision, the parties must attempt to resolve the problems among

themselves. If that procedure has been exhausted, a party may petition the Court for relief in the nature of contempt.

10. Defendants have indicated that they "may" seek to implement a fare increase for Lift–Line customers in order to defray the costs of implementing the Court's directives. Under the regulations, an entity providing paratransit service may charge, for each trip, up to twice the amount that would be charged to a person paying full fare for a trip of similar length, at a similar time of day, on the entity's fixed route system. 49 C.F.R. § 37.131(c).

At this point, however, it remains to be seen whether or when defendants will seek to raise fares in connection with their implementation of this Court's order,[2] and so I find it unnecessary to issue any rulings concerning such increases at this time. I do note, however, that an action that is otherwise permitted under the ADA may nonetheless run afoul of its proscription of retaliation, 42 U.S.C. § 12203, if it is motivated by a desire to punish a person for having opposed any act or practice made unlawful by the ADA. Although I have no reason to believe, and I do not mean to suggest, that defendants harbor any such motives, I urge them to remain mindful of their obligations in this regard, and to strive to ensure that any fare increase be both justified by economic necessity, and equitably applied.

### CONCLUSION

The above directives are hereby ORDERED to implement this Court's Decision and Order, entered August 14, 2001, granting plaintiffs' motion for partial summary judgment. As so ordered, this decision supplements the Court's Decision and Order of August 14, 2001.

IT IS SO ORDERED.

---

**2.** This is especially so since the company is now publicly advertising its plan to *reduce* fares for those who ride buses on the fixed route system.